IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

SARA M. LAMBERT SMITH
and SCOTT SMITH,

                Plaintiffs,

v.                                        CIVIL ACTION NO.  5:14-cv-30075

UNITED STATES OF AMERICA,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant United States of America's Motion for a New Trial, and/or to Vacate, Alter and/or Amend the Judgment Entered in this Civil Action* (Document 113) and *Memorandum in Support* (Document 114), the *Plaintiffs' Response to Defendant, United States of America's Motion for a New Trial, and/or to Vacate, Alter, and/or Amend the Judgment Order Entered in this Civil Action* (Document 118), and the *Defendant United States of America's Reply Memorandum in Support of Its Motion for a New Trial, and/or to Vacate, Alter and/or Amend the Judgment Entered in this Civil Action* (Document 119).

The parties appeared for a bench trial in this matter from July 18, 2016 through July 19, 2016.  On November 15, 2016, the Court entered a *Memorandum Opinion and Order* (Document 104), finding that the Plaintiffs had demonstrated that they were injured by the actions of a doctor deemed to be an employee of the United States.  The Court awarded $29,661.67 in economic

damages and $603,020.00 in non-economic damages to Plaintiff Sarah Lambert Smith, and $40,000 in loss of consortium damages to Plaintiff Scott Smith.

In brief summary, the Plaintiffs claimed that Dr. Roy Wolfe, deemed an employee of the United States, deviated from the applicable standard of care in treating Ms. Smith when she presented to the emergency room at Raleigh General Hospital with postpartum bleeding. She was admitted to the E.R. a little after 5:00 a.m., on December 25, 2013. Dr. Wolfe ordered tests, and saw her at around 6:30 a.m. Ms. Smith's bleeding appeared heavy and had been ongoing since about 2:30 a.m., but her vital signs and lab results relevant to blood loss remained stable and normal. She was prepped for surgery. Dr. Wolfe examined the size and consistency of Ms. Smith's uterus, and found it normal. He performed a dilation and curettage (D&C) to ensure no products of conception remained, attempted to pack her uterus with sponges, administered two uterotonics, and then converted to a hysterectomy. He began the hysterectomy at 9:04 a.m.

The Court made no definitive finding regarding the cause of Ms. Smith's post-partum bleeding, but found that the United States' evidence that she had placenta accreta was unconvincing. The Court credited the standard of care testimony of the Plaintiffs' expert, Dr. William Irvin, who set forth a series of treatment modalities, to be attempted from the most conservative to the most intrusive. The evidence established that the cause of post-partum hemorrhage could not typically be diagnosed unless the uterus is removed through hysterectomy and examined by a pathologist. Therefore, the standard of care for post-partum bleeding is not dependent on the cause of the bleeding. Dr. Irvin presented several studies establishing that multiple treatment methods had success rates of over 60%, regardless of the cause of the bleeding, and some had success rates as high as 90%. The Court concluded that the Plaintiffs had

demonstrated by a preponderance of the evidence that there was a greater than 25% chance that Ms. Smith's bleeding could have been stopped without a hysterectomy, if Dr. Wolfe had followed the applicable standard of care.

Uterine artery embolization is a particularly effective treatment, but would have required Ms. Smith to be transferred to the Charleston Area Medical Center. The Defendant contended that she was not stable enough for transfer, which would have taken approximately fifteen minutes by helicopter or one hour by ambulance. The Court found that the evidence did not support that contention, but, instead, supported the conclusion that transfer for uterine artery embolization was required, if less invasive procedures were not successful in stopping Ms. Smith's bleeding.

The United States seeks reconsideration of the Court's judgment pursuant to Rule 52(b) and/or Rule 59(e). Rule 52(b) provides that, in cases tried without a jury, a party may move the court to amend its findings, make additional findings, and amend the judgment within 28 days after entry of judgment. Such motions may be brought in conjunction with a motion under Rule 59. Rule 59(e) permits parties to seek to alter or amend a court's judgment within 28 days of entry of that judgment. Fed. R. Civ. P. 59(e). Rule 59(e) motions "may only be granted in three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (internal quotation marks and citation omitted). Furthermore, "Rule 59(e) motions may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Melendez v. Sebelius*, 611 F. App'x 762, 764 (4th Cir. 2015) (unpublished) (internal quotation marks and citations omitted).

3

The United States argues that the Court should amend its findings and vacate its judgment based on evidence that the treatments the Court found to be required by the standard of care "were effective only for the treatment of uterine atony and/or placenta accreta." (Def.'s Mem. at 3.) The Court did not find that either condition caused Ms. Smith's bleeding, and so the United States argues that the failure to employ those treatments could not have caused her damages. The United States further argues that the finding that Dr. Wolfe acted in reckless disregard of Ms. Smith's condition is erroneous. This argument is also based on the United States' position that the failure to use certain treatments could not have caused Ms. Smith's harm because those treatments would not have been effective for bleeding caused by any condition other than placenta accreta or atony.

The Plaintiffs argue that the United States is simply attempting to re-litigate facts and legal theories that the Court considered and rejected in the first instance, and is therefore not entitled to relief under the standard of review for motions under Rules 52(b) and 59(e). Substantively, the Plaintiffs emphasize that Dr. Irvin opined, repeatedly, that the standard of care did not depend on the cause of the bleeding. Likewise, Dr. Irvin testified that the likelihood that following the standard of care would successfully stop post-partum bleeding without hysterectomy did not vary significantly based on the cause of the bleeding. The Plaintiffs argue that there was a more than sufficient factual basis to support the Court's finding that Dr. Wolfe acted with reckless disregard in failing to attempt alternative treatment required by the standard of care before performing a hysterectomy.

The Court finds, as an initial matter, that the United States has not presented an intervening change in controlling law, new evidence, or a clear error of law or potential manifest injustice. Its

4

motion must be denied on that basis alone. However, the Court will briefly address the United States' contentions regarding the evidence on causation.

The United States misconstrues the causation issues presented by this case. The Plaintiffs were required to show that Dr. Wolfe's failure to comply with the standard of care caused her damages—or, more specifically, that failure to comply with the applicable standard of care cost her a more than 25% chance of an improved outcome. The Court determined, based on the expert testimony, that the cause of her post-partum bleeding was not a factor in determining either the standard of care or the chance that she could have avoided a hysterectomy with proper treatment. Under the circumstances, the Plaintiffs were not required to prove the cause of Ms. Smith's bleeding. The evidence revealed that whether she had placenta accreta, retained products of conception, an infection, or some other problem, the standard of care includes effective treatments short of hysterectomy.

As the Court detailed in the original opinion, Dr. Irvin testified that certain treatment modalities were more effective for bleeding caused by certain conditions, such as using uterine massage for uterine atony. He explained that doctors work through the entire list because the cause of post-partum bleeding is generally unknown during treatment. He specifically addressed success rates for bleeding caused by placenta accreta because the United States' position at trial was that Ms. Smith's bleeding was caused by placenta accreta. That testimony was essentially aimed at demonstrating that even if the United States was correct, and Ms. Smith had placenta accreta—among the more difficult and dangerous potential causes of post-partum bleeding—the treatment modalities in the standard of care would have been likely to effectively stop the bleeding

5

without a hysterectomy. Dr. Irvin did not suggest that those treatments were *only* effective for bleeding caused by placenta accreta.

Dr. Irvin also offered the general success rates of various treatment methods, including compression sutures (B-Lynch, hemostatic, and multiple square sutures), uterine artery embolization, balloon tamponade, and arterial ligation, each of which have general success rates, regardless of the cause of bleeding, of over 80%. On cross-examination, Dr. Irvin agreed that uterine massage and uterotonics were effective primarily for uterine atony, and would have been of little benefit to Ms. Smith if her bleeding was not caused by atony. When questioned about B-Lynch sutures and uterine packing on cross, he reaffirmed that they are effective treatments for post-partum bleeding, no matter the cause. Dr. Irvin also repeatedly explained that doctors do not know the cause of bleeding with any certainty at the time of treatment, and must therefore attempt all treatments. He testified that the treatments required by the standard of care are collectively very effective in treating post-partum bleeding of any cause. The Court therefore concluded that, had Dr. Wolfe followed the standard of care, there was a greater than 25% chance that Ms. Smith would have retained her fertility. The Court specifically noted:

> In finding that the standard of care requires all available treatment modalities, and that the likelihood of stopping the bleeding without a hysterectomy was greater than twenty-five percent (25%), the Court does not mean to suggest that the failure to perform each treatment, individually, caused Ms. Smith's damages. For example, additional uterotonics may have had little effect, given the lack of evidence of uterine atony. However, several treatments have high success rates for all causes of post-partum hemorrhage, and the Court finds a high likelihood that performing each of the treatment options in turn, until one proved successful, would have resulted in stopping Ms. Smith's bleeding without a hysterectomy.

(Mem. Op. at 14, fn 7.)

The United States' motion, with respect to the finding of reckless disregard, is based on its argument that there is insufficient evidence that the treatments Dr. Wolfe did not perform would have been effective. The Court found, in its initial analysis, and finds again, upon review of the testimony, that ample evidence supports the conclusion that more conservative treatments had a greater than 25% chance of stopping Ms. Smith's bleeding while preserving her fertility. The United States has presented nothing that alters the Court's original conclusions.

Wherefore, for the reasons stated herein and for the reasons stated in more detail in the Court's original *Memorandum Opinion and Order* (Document 104), the Court **ORDERS** that the *Defendant United States of America's Motion for a New Trial, and/or to Vacate, Alter and/or Amend the Judgment Entered in this Civil Action* (Document 113) be **DENIED.**

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER: March 28, 2017

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA